THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SAM KAPLAN and Another, Appellants, Impleaded with CHARLES EICHHORN and Others, Defendants.*

First Department, February 2, 1934..

---

* Affd., 264 N. Y. 675.

*Max D. Steuer* of counsel [*Irving J. Levy* with him on the brief; *Max D. Steuer*, attorney], for the appellants.

*Robert C. Taylor, Assistant District Attorney*, of counsel [*Thomas C. T. Crain, District Attorney*], for the respondent.

MERRELL, J. The defendant Kaplan was the president of a labor union known as the Moving Picture Operators Union of Greater New York, Local 306. The defendant Theodore Greenberg was an organizer and a member of the executive board of said Local 306. The said local consisted of a membership of about 1,200 persons. The indictment was against the defendants Kaplan and Greenberg and twenty other defendants who were members of said Local 306. At the trial, on motion of counsel, the court directed the acquittal of three of the defendants named in the indictment, namely, Bush, Bishop and Williams, and, by consent of counsel, the indictment abated as against the defendant Friedman, who had died prior to the trial. On motion of counsel for the defendants (the district attorney consenting as to the defendants Lafante and Linder) James Lafante, Morris Sternberg and John Linder were acquitted. The jury at the trial acquitted the defendants Weinberger, Luck, Stewart, Weiss and Paul. The defendants Kaplan, Eichhorn, Castle, Day, Rotker, Wolheim, Feinberg, Paster, Greenberg and Avzar were convicted of the crime charged in the indictment. Upon such conviction the court imposed sentence upon the defendants, appellants, Kaplan and Greenberg, that each be committed to the penitentiary, with a recommendation that they there be confined for the period of six months. As to the convicted defendants Eichhorn, Castle, Wolheim and Avzar, the judgment of the court fined each of said defendants $500, and as to the defendants Day, Rotker, Paster and Feinberg, the court imposed a fine upon each upon their conviction of $250. In default of payment of said fines, the defendants stood committed to the city prison of the city of New York, not exceeding one day for each dollar of said fine until the same was paid. Subsequently, the eight defendants, upon whom a fine had been imposed, paid the fines imposed upon the judgment of conviction. As to the defendants Kaplan and Greenberg, a certificate of reasonable doubt was granted. (See *People* v. *Kaplan*, 147 Misc. 752.)

Without going into a long statement of the circumstances leading

up to the indictment and conviction of the appellants, it is sufficient to say that in Local 306 there arose certain dissensions between two factions, one faction being headed by the defendant Kaplan, the president of the local, and the other by a man named Polin. It was the contention of the Polin faction that large amounts of money of the union had been wasted in various ways, chiefly through the payment of exorbitant salaries to Kaplan and other officers of the local belonging to the Kaplan faction. There was a circularization by the Polin faction to the members of the local of charges of waste and extravagance, and an insistence that the president, Kaplan, and his fellow officers should be called to an accounting. Finally, three actions were brought in Supreme Court, Queens county, by Polin and others, the first of which was to compel Kaplan and his fellows to account. The second action was to recover damages because of the unlawful acts of the local in expelling certain members, and the third was for injunctive relief. These actions were pending in Queens County Supreme Court when the acts of the defendants for which they were indicted occurred. According to the indictment, for the purpose of compelling a discontinuance of said actions, the appellants obtained an amendment to the rules of the local and brought proceedings for the expulsion of the members of the Polin faction who were responsible for the institution of said Queens county actions. Not only this, but violence was resorted to and members of the Polin faction were attacked, both verbally and physically, and were beaten up. A large amount of evidence of these physical encounters, committed with the very evident purpose of compelling the Polin faction to desist from their actions and to agree to the propriety of the action of Kaplan and his followers in the premises, was denied by the defendants, and thereby a question of fact as to the veracity of the witnesses was presented to the jury. The jury believed the witnesses sworn on the part of the People and disbelieved the witnesses for the defendants, and their verdict upon that question of fact is conclusive. The indictment in this case was based upon the contention of the People that the acts of violence on the part of the defendants toward Polin and his followers and their expulsion from the order, which was effected by the Kaplan faction, were all steps taken for the purpose of coercing Polin and his followers into discontinuing the Queens county actions. It was the contention of the defendants that they acted lawfully within the by-laws of the local, and that, in expelling said members, they acted well within the authority conferred by the constitution and by-laws of said local. The defendants insist, having acted as they had a legal right to do in expelling the members of the

Polin faction because of their insubordination, they cannot be charged with having wrongfully or unlawfully coerced the members of the Polin faction into discontinuing said actions in Queens county.

Section 530 of the Penal Law makes coercion a misdemeanor. It provides as follows:

" § 530. Coercing another person a misdemeanor. A person who with a view to compel another person to do or to abstain from doing an act which such other person has a legal right to do or to abstain from doing, wrongfully and unlawfully,

" 1. Uses *violence* or inflicts *injury* upon such other person or his family, or a member thereof, or upon his property or threatens such *violence* or *injury;* or,

" 2. Deprives any such person of any tool, implement or clothing or hinders him in the use thereof; or,

" 3. Uses or attempts the *intimidation* of such person by *threats* or *force,*

" Is guilty of a misdemeanor." (Italics are the writer's.)

The appellants argue that the evidence fails to show that in any respect, in expelling the members of the Polin faction, the defendants acted either wrongfully or unlawfully, and they argue that so long as the means adopted to obtain such expulsion were lawful and within the constitution and by-laws of the local, the defendants cannot be charged with a violation of section 530 of the Penal Law. The court, at the trial, held otherwise, and held that while the means whereby the defendants sought to coerce the Polin people may have been lawful, yet, nevertheless, the end which they were seeking to accomplish, namely, the discontinuance of the Queens county actions, was unlawful and in violation of the statute. We think the learned justice presiding at the trial was entirely correct in the position which he took and maintained through the trial.

While a number of errors are claimed by the appellants to have occurred during the trial, in the introduction of evidence against the objection and exception of defendants' trial counsel, we do not think there occurred any error prejudicial to the rights of the defendants, appellants, requiring a reversal of the judgment of conviction.

The chief ground upon which reversal is asked, and the only one which merits serious consideration by this court, is that adverted to, namely, that, the means used in expelling the Polin people from the local being entirely lawful, the defendants cannot be charged with coercion in violation of the statute. Early in the trial the justice presiding clearly indicated his views upon that

subject, and in his main charge, we think, correctly instructed the jury in the following language: " Now, it follows from what I have said about the law that we are not concerned here primarily with whether these men were expelled in violation of the contract between them and the Union or not. That has not been the principal object. That would be the principal object — it would be the object in a civil suit, to inquire whether the contract has been broken; but it is not the prime object in a criminal action, where the people are not a party to the contract, and the only object of inquiry is to determine whether a crime has been committed.

" If these men were expelled in violation of the contract, that does not prove that the defendants committed this particular crime. If they expelled these men, as I have said before, for some other reason, even if they expelled them by breaking the contract to do so, if they expelled them for some other reason than the reason for forcing a discontinuance of these actions, then the defendants are not guilty.

" On the other hand, even if they conformed to the contract and did not violate their own rules in expelling them, yet if that expulsion was a cloak, a means of forcing the complainants and coercing them, by fear of injury to their persons or property or business, to discontinue these actions, then the mere fact that they did it in conformity with the rules of the Union is not a defense, because nobody has a right to commit a crime, whether they commit it in conformity with the rule of some institution or not. The rules, though proper in themselves, cannot be used to cloak a crime.

" Therefore, as I say, the prime object here is not to determine whether the action of the Union violated its contract with these men, but it is to determine whether their action was a criminal action, namely; the applying of coercive means to compel these men to abandon their lawsuits."

Thus, in the portion of the charge above quoted, the judge clearly discriminated between the " end " and the " means." Clearly, in the case at bar, the end which the defendants sought to accomplish was not expulsion. The provision of the statute that " a person who with a view to compel another person to do or to abstain from doing " an act, clearly shows that it was the end in view that constituted the offense, and not the means. Indeed, the evidence shows that various " means " were employed to induce Polin and his coplaintiffs to drop the actions brought in Queens county. This " means " consisted of verbal abuse and actual assaults, and preferment of charges against members of the Polin faction. All of these acts were means, and were not the end desired, which was that the Queens county actions should

be discontinued. It may well be that a man committing a crime may commit intermediate acts which, in themselves, are innocent, but whether the act becomes criminal or not depends on the intent of the actor. As was said by CULLEN, Ch. J., in *People ex rel. Hegeman* v. *Corrigan* (195 N. Y. 1, 12, 13), "it is the knowledge or belief of the actor at the time that stamps identically the same intent as either criminal or innocent." The mere fact that the intermediate acts may, in themselves, have been innocent and entirely lawful, yet, if the intent of the perpetrators, by said acts, was an unlawful one, then a crime was made out. In short, the position of the appellants is that, resorting only to lawful means absolved them from guilt when such means were to accomplish an unlawful purpose. The very question presented upon this appeal seems to have been determined by the Court of Appeals in *People* v. *Dolowich* (262 N. Y. 507). In that case, as in the case at bar, the defendants were convicted of the crime of coercion in violation of the provisions of section 530 of the Penal Law. The defendants were tried in Court of Special Sessions, borough of The Bronx, and were convicted and sentenced to imprisonment for an indeterminate term in the New York County Penitentiary. This court unanimously affirmed the judgment of conviction, without opinion (236 App. Div. 795). Leave to appeal from this court to the Court of Appeals was granted by a member of that court. The Court of Appeals unanimously affirmed, without opinion, this court, which had affirmed the conviction of the defendants in the Court of Special Sessions, Bronx county. In that case, in this court and in the Court of Appeals, it was the contention of the appellants, as here, that the defendants, appellants, could not be found guilty of coercion, because they "threatened to do what they had a legal right to do." That is the precise question presented upon this appeal, and by affirming the conviction the Court of Appeals must have held that acts, in themselves innocent, if for an unlawful purpose, became criminal. In the *Dolowich* case the threats were to ruin the business of the complainant. The contention of the People was that the threats to ruin the business of the complainant, even though it be by alleged "competition" with the complainant in his business, and even though it be assumed to be otherwise lawful, it became unlawful when accomplished by an unlawful and criminal intent and purpose.

We have examined the briefs in this court and in the Court of Appeals in the case of *People* v. *Dolowich*. The People cited the cases of *People* v. *Sheridan* (186 App. Div. 211) and *People* v. *Hughes* (137 N. Y. 29). These two cases were extortion cases, but the rules therein enunciated apply to coercion cases. In

*People* v. *Sheridan* the defendant was an elevator inspector in the building department of the city of New York. He was convicted of extortion upon facts which appear in the following excerpt from the opinion of the court (at p. 212): " *Appellant's chief point on this appeal is one of law — that his offense was not extortion, because, for all that appears, the elevator was being operated without a permit, so that to stop it through a complaint would not amount to ' an unlawful injury to * * * property '* within Penal Law, section 851. Or, more broadly, if a violation existed there would be no extortive threats for an inspector to announce that unless he should be paid money he would report it as subject to a complaint.

" This misconceives the sense of the words ' unlawful injury to * * * property.' A threat by means of a complaint to stop the running of this elevator would deprive its owner of the use of his property, and such interference has been held to come within this term ' unlawful injury to * * * property.' (*People ex rel. Short* v. *Warden of City Prison*, 145 App. Div. 861, 863; affd., 206 N. Y. 632.)

" *The unlawfulness lies in the motive.* If its purpose be unlawful, then the act (which under other conditions might be justified) becomes unlawful. (*People* v. *Weinseimer*, 117 App. Div. 603; affd., 190 N. Y. 537.) The offense in such criminal prosecutions is in *mala fides* on the part of the official who makes the threats. Thus where the victim of the extortion was actually practicing dentistry in violation of law, payments to a professed detective raised for the jury the question of how far such payments had been induced by fear, so as to make out this offense. (*People ex rel. Damato* v. *Kempner*, 163 App. Div. 966.)

" The defendant sought to have rulings during the trial and in the charge to the jury that defendant could not be convicted if he merely threatened to do an act which it was his duty to do, or his official right to do, even if he did receive fifty dollars by means of such threat, which the court refused. He also contended that the prosecution had to prove that the elevator was being run under a regular permit, but, as we have seen, this was no element of the offense, as an actual violator of the Building Code might be the victim of such extortion." (Italics are the writer's.)

In *People* v. *Hughes* the defendant was likewise convicted of the crime of extortion. The defendant was the head of a labor organization. In the opinion of the Court of Appeals (at p. 37) it is said: " The next ground of the appellant's argument is that there was no evidence to sustain the indictment and the prisoner should have been acquitted by direction of court. *The argument is directed to the point, that what the prisoner threatened and did was not an unlawful*

*act,* and so no threat of an ' unlawful injury to property ' was proven which is a necessary element in the crime charged. More in detail the contention is that Hughes might lawfully refuse to buy goods of Adler and Bros., and might lawfully persuade his friends to do the same thing, and that no more than that is proved against him." (Italics are the writer's.)

At page 39 the court said: " *Conduct takes its legal color and quality more or less from the circumstances surrounding it and the intent or purpose which controls it, and the same act may be lawful or unlawful as thus colored and qualified.* One may refuse to deal with a firm because of a conviction that it does not give honest compensation for labor, and may ask his friends or the public to do the same thing, and the conduct may produce injury to the business criticized without thereby becoming illegal. The jury were so told in substance and permitted to judge whether that was the true quality and character of the prisoner's action. On the other hand, one may influence his friends and the public to inflict the same injury of withdrawal of custom without just or excusable reason and by fraudulently concealing the fact that it does not and pretending that it does exist, and using official power and influence to make effective the deception, and to force and compel unwilling dealers to desist from their purchases, and that for the sole purpose of extorting money, in which case the resultant injury will be unlawful. What Hughes threatened was found by the jury to be such an unlawful injury. They saw that he conveyed the idea strongly and clearly that unless his demand of money was complied with he could and would by threatening the hostility of the Order, compel the retail dealers to withdraw their custom, and could and would utilize the power he had although the original occasion for its exercise was gone. *Such a threat within the doctrine of the Barondess case, and within that also of the dissenting opinion in this court amounts to a threat to do an unlawful injury to property.* (*People* v. *Barondess,* 133 N. Y. 649; 61 Hun, 581.) There was, therefore, a question for the jury, and the court could not properly have directed an acquittal." (Italics are the writer's.)

It, therefore, seems to us that, applying the principle thus followed by this court and by the Court of Appeals, the very things which the defendants threatened to do and carried out were unlawful acts rendering the defendants liable for a violation of section 530 of the Penal Law. We think we are bound by our decision affirming the conviction of the defendants in *People* v. *Dolowich,* and the unanimous affirmance of this court by the Court of Appeals in that case.

We think the trial of these defendants was eminently fair. Their

conviction hinged on the narrow question as to whether or not acts of the defendants, while in themselves lawful, when committed for an unlawful purpose, to wit, the coercion of a person or persons, constitute a violation of the statute.

The judgment convicting the defendants of the crime of coercion and the order appealed from should be affirmed.

FINCH, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Judgment and order affirmed.